BROWN, Plaintiff in error, v. STATE, Defendant in error.

*No. State 10. Argued February 28, 1973.—Decided April 9, 1973.*
(Also reported in 205 N. W. 2d 566.)

160

For the plaintiff in error the cause was submitted on the brief of *Roderick L. Eisele* of Elkhorn.

For the defendant in error the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J.   One crucial issue is involved on this appeal:

Was there any impropriety, constitutional or otherwise, in the preparation of the 1971 Walworth county jury list with respect to: (a) students; (b) persons from the age of eighteen to twenty-one; or (c) teachers?

The opening step in the petit jury selection process is the compilation of a jury list for a term of court. Defendant contends that the 1971 Walworth county jury list was compiled in a manner which denied him his right to a trial before an impartial jury of peers by systematically and deliberately excluding three classes of persons from the prepared jury list. These three classes, according to defendant, are: (a) students, (b) persons between the ages of eighteen and twenty-one years, and (c) teachers.

In support of his motion attacking the jury array, which motion was limited to the exclusion of young people and students, defendant attached an affidavit showing the following distribution of ages in the April, 1971, term petit jury panel list:

| | |
|---|---|
| 18–21 | 0 |
| 22–29 | 2 |
| 30–39 | 6 |
| 40–49 | 12 |
| 50–59 | 14 |
| 60–69 | 12 |
| 70–80 | 3 |

The affidavit further asserts that although four of the 49 jurors on the panel were from Whitewater, none are students.

The trial court ordered a hearing on the motion and this hearing was held on August 23d and at the hearing Mrs. Clemons, who had been a Walworth county jury commissioner since 1953, testified as to her method of recruiting prospective jurors. She stated that she was one of three jury commissioners and was responsible for selecting part of the jury list, 160 persons from the cities of Elkhorn and Lake Geneva and from the towns of Lyons, Geneva, Lynn, Genoa City and Bloomfield. She stated that she took her names from sources such as telephone directories and town officials. She endeavored to achieve a racial and ethnic balance on the jury list while yet "check[ing] further as to their responsibility."

Mrs. Clemons further testified that it was her practice to exclude from the jury list those who were ill or hard of hearing, young mothers with children, and men whom she knew could be excused if they so desired. Also excluded were nurses and teachers because "[i]f we did [place them on the list], they could be excused, I believe." Students were excluded, testified Mrs. Clemons, because "[t]hey would be away at college and it would be quite a hardship." Mrs. Clemons testified she excluded from the jury lists persons between the ages of eighteen to twenty-one because "[m]y list was due April 1st and so I haven't prepared a list since eighteen year olds could serve."

The right to a trial by one's peers, traceable to the Frankish *inquisitio* of the ninth century,[1] brought to England by the Normans in 1066, and gradually extended to a variety of cases by Henry II,[2] was formalized in the Magna Charta in 1215,[3] and in both the United States[4]

---

[1] 1 Pollock and Maitland, *History of English Law* (2d ed. 1952), 140.

[2] *Id.* at page 143.

[3] Macy, *The English Constitution*, Appendix, 487, 492, Magna Charta, para. 39: "No freeman shall be taken, imprisoned, dis-

and Wisconsin Constitutions.[5] This constitutional right of an accused to a trial by an impartial jury has been amplified by the United States Supreme Court to require jury selection procedures to draw their potential jurors from a cross-section of the community.[6] Consistently condemned by the high court and other courts has been the "systematic and intentional exclusion," [7] or "purposeful discrimination" [8] of any group or class of persons.[9] This condemnation has precluded discrimination based upon race,[10] sex,[11] political beliefs or affiliations,[12] voter registration,[13] day wage earners,[14] religion,[15] and disposition to acquit.[16] The reasons underlying these cases were expressed early in *Strauder v. West Virginia*, wherein the supreme court stated:

seised, outlawed, banished, or in any way destroyed, nor will We proceed against or prosecute him except by lawful judgment of his peers or the law of the land."

[4] U. S. Const. amendments VI and VII.

[5] Wis. Const. art. I, sec. 7.

[6] *Fay v. New York* (1947), 332 U. S. 261, 299, 300, 67 Sup. Ct. 1613, 91 L. Ed. 2043 (dissent). *See also: Brown v. Allen* (1953), 344 U. S. 443, 474, 73 Sup. Ct. 397, 97 L. Ed. 469; *Smith v. Texas* (1940), 311 U. S. 128, 130, 61 Sup. Ct. 164, 85 L. Ed. 84.

[7] *Thiel v. Southern Pacific Co.* (1946), 328 U. S. 217, 220, 66 Sup. Ct. 984, 90 L. Ed. 1181.

[8] *Whitus v. Georgia* (1967), 385 U. S. 545, 551, 87 Sup. Ct. 643, 17 L. Ed. 2d 599. *See also: State v. Holmstrom* (1969), 43 Wis. 2d 465, 472, 168 N. W. 2d 574.

[9] *See* 47 Am. Jur. 2d, *Jury*, p. 756, sec. 163.

[10] *Eubanks v. Louisiana* (1958), 356 U. S. 584, 78 Sup. Ct. 970, 2 L. Ed. 2d 991.

[11] *Hoyt v. Florida* (1961), 368 U. S. 57, 82 Sup. Ct. 159, 7 L. Ed. 2d 118.

[12] *Ruthenberg v. United States* (1918), 245 U. S. 480, 38 Sup. Ct. 168, 62 L. Ed. 414.

[13] *State v. Little* (1960), 87 Ariz. 295, 350 Pac. 2d 756.

[14] *Thiel v. Southern Pacific Co., supra,* footnote 7.

[15] *Juarez v. State* (1925), 102 Tex. Crim. 297, 277 S. W. 1091.

[16] *Teat v. Land* (1914), 135 La. 782, 66 So. 199.

". . . The very idea of a jury is a body of men composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds. Blackstone in his Commentaries, says, 'The right of trial by jury, or the country, is a trial by the peers of every Englishman, and is the grand bulwark of his liberties, and is secured to him by the Great Charter.' It is also guarded by statutory enactments intended to make impossible what Mr. Bentham called 'packing juries.' It is well known that prejudices often exist against particular classes in the community, which sway the judgment of jurors, and which, therefore, operate in some cases to deny to persons of those classes the full enjoyment of that protection which others enjoy." [17]

The precise statutory provisions governing the preparation of the petit jury list are embodied in ch. 255, Stats., and it is clear that the right to challenge a jury array as embodied in the jury list is at a time prior to trial and prior to the impaneling of a specific petit jury.[18] In *Ullman v. State* [19] it was held that the challenge must be sufficient to adequately inform the trial court of the precise departures which are challenged. It was further stated:

". . . The right of challenge should be exercised before commencing to impanel the jury, otherwise it should be deemed waived. 12 Ency. Pl. & Pr. 424. No departure from that rule is permissible except for extraordinary reasons." [20]

This rule has been followed in several other cases since its initial pronouncement.[21]

[17] (1879), 100 U. S. 303, 308, 309, 25 L. Ed. 664.

[18] *Ullman v. State* (1905), 124 Wis. 602, 103 N. W. 6.

[19] *Id.* at page 607.

[20] *Id.*

[21] *See e. g., State v. Nutley* (1964), 24 Wis. 2d 527, 538, 129 N. W. 2d 155, certiorari denied; *State v. Burnett* (1966), 30 Wis. 2d 375, 385, 141 N. W. 2d 221, certiorari denied.

Discrimination in the jury selection process, however, is not ordinarily presumed,[22] and the burden of establishing a prima facie case of discrimination is on the person challenging the validity of the jury array.[23] When a defendant in a criminal case does succeed in establishing a prima facie case of discrimination, the burden thereupon falls upon the state to rebut or explain it.[24] These rules have been summarized by this court in the recent case of *State v. Holmstrom*[25] to require:

"(1) A systematic exclusion;
"(2) Of some representative unit of citizens."

Elaborating, it was noted that:

"A systematic exclusion can be shown by the direct testimony of the jury commissioners or by proving a disproportionate representation of a unit of citizens on the jury array over a period of time."[26]

The mere lack of a proportional representation has not been regarded as constitutionally deficient,[27] and indeed, it has been held that an accused has no constitutional right to a jury composed of members, or having even a single member, of his or her class, race or sex.[28] This principle was stated in *Fay v. New York* as follows:

[22] *See e. g., Hernandez v. Texas* (1954), 347 U. S. 475, 479, 74 Sup. Ct. 667, 98 L. Ed. 866; *Whitus v. Georgia, supra,* footnote 8, at pages 550, 551.

[23] *Avery v. Georgia* (1953), 345 U. S. 559, 562, 73 Sup. Ct. 891, 97 L. Ed. 1244. *See also: State v. Bond* (1969), 41 Wis. 2d 219, 226, 163 N. W. 2d 601; *State v. Zdiarstek* (1972), 53 Wis. 2d 776, 781, 193 N. W. 2d 833.

[24] *Whitus v. Georgia, supra,* footnote 8, at page 550. *See also: State v. Holmstrom, supra,* footnote 8, at page 471.

[25] *Supra,* footnote 8, at page 472.

[26] *Id.; see also:* Kuhn, *Jury Discrimination: The Next Phase,* 41 So. Cal. L. Rev. (1968), 235, 258.

[27] *See e. g., Virginia v. Rives* (1879), 100 U. S. 313, 322, 323, 25 L. Ed. 667; *Akins v. Texas* (1945), 325 U. S. 398, 403, 65 Sup. Ct. 1276, 89 L. Ed. 1692.

[28] *See e. g., Swain v. Alabama* (1965), 380 U. S. 202, 203, 204, 85 Sup. Ct. 824, 13 L. Ed. 2d 759.

"It is fundamental in questioning the composition of a jury that a mere showing that a class was not represented in a particular jury is not enough; there must be a clear showing that its absence was caused by discrimination . . . ." [29]

Certain statutory exemptions from jury service are provided under sec. 255.02, Stats., specifying those otherwise qualified persons who are exempt from jury duty either by virtue of their occupation, or by appropriate court order. [30] This statute sets forth three classes of juror exemption: (1) automatic exemption; (2) exemption upon request of the person or upon the judge's own motion; and (3) individual exemption for good cause and class exemption by order of the judge based upon a finding that jury service would entail undue hardship, extreme inconvenience or serious obstruction or delay in the administration of justice.

---

[29] *Supra*, footnote 6, at page 284.

[30] Sec. 255.02, Stats. **"Who are exempt.** (1) The following persons are exempt from serving as jurors:

"(a) All officers of the United States; elective state officers; members and officers of the legislature during the session thereof; city and county officers; constables; judges and clerks of courts; and officers of fire departments and active members of fire companies organized according to law.

"(b) Attorneys at law; physicians; surgeons; dentists; Christian Science practitioners and readers; and ministers of the gospel or any religious society.

"(c) Students who are attending or have attended a law school or medical school.

"(2) The following persons shall be exempted upon their request or upon the judge's own motion:

"(a) All administrators, professors, instructors and teachers and their assistants of public and private primary and secondary schools and institutions of higher education.

"(b) One dispensing druggist in each prescription drugstore and one embalmer holding license issued by the department of health and social services in each undertaking establishment.

"(c) Officers and employes of the several state and county institutions.

How then do these general rules for the selection of jurors apply to the challenges of this particular jury list on the ground that there was a systematic and discriminatory exclusion of (a) students, (b) young people from eighteen to twenty-one years old, and (c) teachers?

*Exclusion of students.*

As to the claim that students were systematically excluded, it should first be noted that there is no statutory authority (under sec. 255.02, Stats.) to systematically exclude this class of potential jurors solely on the basis of an assumed hardship. However, the systematic exclusion of students from potential jury service has been permitted by this court. Specifically, this was approved in *State v. Holmstrom*,[31] where it was held that the exclusion of students from jury service was "based on reason and common sense." This court reasoned that since most students did not attain eligible jury service age until their senior year in college, they would probably have left school before their turn to serve occurred. The court concluded the exclusion of this class of persons was permissible. It is important to note that since the instant jury list was compiled, pursuant to sec. 255.04 (2) (a), in the spring of 1971—before students between the

"(d) Any person over 65.

"(3) (a) A judge for good cause may excuse or exclude from jury service any person called as a juror.

"(b) Any class or group of persons may, for the public interest, be excluded from the jury panel or excused from service as jurors by order of the judge based on a finding that such jury service would entail undue hardship, extreme inconvenience or serious obstruction or delay in the fair and impartial administration of justice.

"(c) No citizen shall be excluded from service as grand or petit juror in any court of this state on account of race or color."

[31] *Supra*, footnote 8, at page 473.

ages of eighteen and twenty-one became eligible to vote and hence serve as jurors—the *Holmstrom* reasoning applies in this case and permits the exclusion of these students in this particular array.

Since the eighteen to twenty-one year age group became eligible to vote and thus to serve on juries, the *Holmstrom* reasoning no longer applies to permit exclusion of students of this age group or older from jury service. Some eighteen and even nineteen year olds are in high school. Young people otherwise qualified for jury service should not be excluded unless the proper statutory procedure has been observed and the exclusion of such students is directed by the court, following the *Holmstrom* rationale.

We conclude, therefore, that although defendant's challenge to the jury array on this ground was timely, the exclusion of students was authorized for the reasons spelled out in *Holmstrom*.

### *Exclusion of eighteen to twenty-one year olds.*

Persons between the ages of eighteen and twenty-one were excluded from the 1971 list of jurors for Walworth county. Defendant contends that the moment the twenty-sixth amendment became law in April, 1971, the jury list which had already been completed was invalidated and should have been modified so that this age group would have been represented by the time of defendant's trial in August of 1971. But it is clear that after a change making new classes of potential jurors eligible for jury service a reasonable period of time should be allowed to adjust the jury lists.

In the case of *Glasser v. United States* [32] the United States Supreme Court was asked to consider the contention that an Illinois grand jury had illegally excluded

[32] (1942), 315 U. S. 60, 62 Sup. Ct. 457, 86 L. Ed. 680.

women therefrom, the jury having brought in indictments against the defendants which later developed into convictions. The supreme court noted that it was not until July 1, 1939, that two acts of the state of Illinois providing for women jurors became effective and that the Illinois grand jury had been summoned on August 25, 1939.[33] The supreme court held that the jury was not defective due to the short period of time between the Illinois acts and the summoning of the jury:

"[W]e are of opinion that, in view of the short time elapsing between the effective date of the Illinois Acts and the summoning of the grand jury, it was not error to omit the names of women from federal jury lists, where it was not shown that women's names had yet appeared on the state jury lists." [34]

A like result occurred in the Eighth Circuit Court of Appeals in *York v. United States*.[35] In *York*, a defendant, convicted for having transported a stolen motor vehicle in interstate commerce, contended that both the grand and petit juries intentionally and systematically excluded women. The court of appeals pointed out that legislation, implementing an earlier enacted Missouri constitutional amendment prohibiting jury disqualification based upon sex, was enacted on April 2, 1946, and became effective on July 1, 1946. The defendant was tried in federal district court in September, 1946, with all male jurors impaneled from lists which had been compiled in June, 1946. Quoting *Glasser v. United States*, the court of appeals held that adding women to the lists in the fall of 1946, after defendant's trial, was

[33] The supreme court noted that sec. 275 of the Judicial Code (28 U. S. C. 411) provided that federal jurors in a federal court are to have the qualifications of jurors in the highest court of the state. *Id.* at page 64.

[34] *Supra,* footnote 32, at page 65.

[35] (8th Cir. 1948), 167 Fed. 2d 847.

not an intentional and systematic exclusion of women from the jury.[36].

This court has also spoken to the issue of the amount of time which should be allotted to effect changes in jury procedures. In *Ray v. Lake Superior Terminal & Transfer Ry.*, this court held proper a trial court's overruling a motion challenging the array of jurors for lack of compliance with the statute in their selection.[37] The court noted that the statute was changed three days after the commencement of the term of the trial court and stated:

". . . When jurors have been drawn and designated according to law to serve at a term of court, a mere change in the method of obtaining jurors, thereafter made, will not affect those already drawn, but they will continue, notwithstanding such change in the law, legal jurors for the term unless excused or discharged by the court." [38]

We conclude that although this particular jury list was not invalid for excluding eighteen to twenty-one year olds, jury lists prepared after a reasonable time following the adoption of the twenty-sixth amendment must not systematically exclude the newly enfranchised young voters.

*Exclusion of teachers.*

As to the exclusion of teachers it must be noted again that there is no statutory exemption for teachers from jury service under sec. 255.02, Stats. Here, the teachers were not given a special exemption by court order under sec. 255.02 (3) (b). While teachers may also be excused

---

[36] *Id.* at page 848.

[37] (1898), 99 Wis. 617, 75 N. W. 420.

[38] *Id.* at page 619. *Ray v. Lake Superior Terminal & Transfer Ry.* was followed in *Welty v. Lake Superior Terminal & Transfer Ry.* (1898), 100 Wis. 128, 144, 75 N. W. 1022.

at their own request under sec. 255.02 (2) (a), this was not done here. There is no authority for jury commissioners systematically to exclude all teachers. While the United States Supreme Court acknowledged in *Thiel v. Southern Pacific Co.*[39] that a judge would be authorized to exclude individual laborers for hardship, all such laborers could not be excluded. We see no essential difference between the exclusion of day laborers as a group and the exclusion of teachers. Neither is valid.

Although the exclusion of all teachers absent a specific court-ordered exemption under sec. 255.02 (3) (b), Stats., is invalid, in this particular case the exclusion of teachers must be sustained because the defendant did not specifically challenge the exclusion of teachers until after the petit jury for the defendant's case had been impaneled. This is too late. It is reasonable that there should be some limitation on the time at which a jury array can be challenged and once a particular jury has been impaneled it is reasonable to conclude that challenges to the array from which the jury was picked have been waived. Section 270.52 provides:

"**Irregularities in venires, etc., immaterial.** No irregularity in any writ of venire facias or in the drawing, summoning, returning or impaneling of petit jurors shall be sufficient to set aside a verdict unless the party making the objection was injured by the irregularity or unless the objection was made before the returning of the verdict."

This statute refers to the challenging of a jury that has been impaneled and all of the irregularities referred to concern the process by which the jury has actually been impaneled. Where such irregularities are contended, the statute provides that the objection can be made at any time before the returning of the verdict. This statute

---

[39] *Supra*, footnote 7, at page 224.

does not allow a challenge to a general jury array at such a late stage as was attempted here.

In challenging a jury array, once a systematic discrimination in the array has been established and insufficiently explained, it follows that the jury list is invalid and this is true without a showing of prejudice. This was unequivocally stated by the United States Supreme Court in *Hill v. Texas*,[40] an appeal from the Court of Criminal Appeals of Texas which had affirmed a lower court rape conviction:

". . . Where, as in this case, timely objection has laid bare a discrimination in the selection of grand jurors, the conviction cannot stand, because the constitution prohibits the procedure by which it was obtained." [41]

Although the trial court was in error here in requiring defendant to show prejudice to him of any systematic and discriminatory exclusion of potential jurors this made no difference because the only exclusions which were objected to by a timely motion—students and young people—were not invalid in this case under the circumstances.

*By the Court.*—Order affirmed.

---

[40] (1942), 316 U. S. 400, 62 Sup. Ct. 1159, 86 L. Ed. 1559.

[41] *Id.* at page 406. *See also: Whitus v. Georgia, supra,* footnote 8, at page 553; *Patton v. Mississippi* (1947), 332 U. S. 463, 68 Sup. Ct. 184, 92 L. Ed. 76; *Eubanks v. Louisiana, supra,* footnote 10, at page 589.