KNOX, Respondent, v. AMERICAN STANDARD INSURANCE
COMPANY OF WISCONSIN, Appellant.

*No. 157. Submitted under sec. (Rule) 251.54 February 6, 1974.—
Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 333.)

The cause was submitted for the appellant on the brief of *John D. Winner* and *Jasper, Winner, McCallum & Sauthoff*, all of Madison, and for the respondent on the brief of *Kivett & Kasdorf*, attorneys, and *Nonald J. Lewis* and *William M. Cannon* of counsel, all of Milwaukee.

BEILFUSS, J.   The issue as we see it is whether there is credible evidence in the record to sustain the jury finding of 70 percent of the causal negligence on the part of Kenneth Puls, the deceased driver insured by the defendant-appellant, American Standard Insurance Company of Wisconsin, and a 30 percent finding on the part of Robert Knox, the plaintiff-respondent.

Innumerable cases stand for the legal proposition that if there is any credible evidence or permissible inference therefrom which support a jury verdict it should be

sustained. This is particularly true as to questions of comparative negligence and more so when the verdict and the evidence have been reviewed and the verdict approved by the trial judge as was done here.

It is somewhat difficult to portray the physical scene in writing. We will attempt to do so.

State Highway 67 runs in a general north-south direction in the area in question. The plaintiff Robert Knox was driving his 1962 Rambler south on Highway 67 at about 8 p. m., on August 25, 1966. Members of his family were passengers. Kenneth Puls, at the same time, was driving his 1965 Chevrolet north on Highway 67.

As one drives south on Highway 67, as the plaintiff Knox was doing, the physical condition of the highway can be somewhat confusing. At a point near the point of impact, Highway 67 curves to the right or southwest, proceeds a few hundred feet southwesterly and then curves to the left to again assume a north-south direction. As you approach the first curve from the north going south, it intersects with Limestone Road, which also runs north-south. If you drive straight ahead on Highway 67 instead of making the curve to the right, you are on Limestone Road. The utility poles adjacent to Highway 67 continue in a straight line and run adjacent to Limestone Road. Further, the view of a driver in the position of Knox to the right along the route of Highway 67 is somewhat restricted because of a high bank and brush and grass.

While Knox's testimony is somewhat weakened by prior inconsistent statements, the explanation given by him at the trial is as follows: As he approached the curve he was driving south with a destination of Oconomowoc. He was in his own right-hand lane, traveling at a speed of 45 to 50 miles per hour. He had passed a highway sign suggesting a speed not in excess of 40 miles per hour. He first saw the Puls vehicle when the two vehicles were

about 100 feet apart (in one inconsistent statement he said 15 to 20 feet apart). He testified the Puls vehicle was entirely in his lane of travel and that he turned into his left lane to avoid Puls; that Puls then turned back to his proper lane; that he then applied his brakes but the head-on collision occurred right at the point where it meets Limestone Road. Puls was killed as were two passengers in the Knox vehicle.

The physical evidence at the scene right after the accident conclusively shows that Knox's skid marks were 50 feet long, all in Puls' lane of travel and terminated at the point of impact. The impact was entirely in Puls' lane of travel.

The only other eyewitness to the collision who testified was Robert Steger. His version is in sharp contrast. He knew who Puls was but did not know him well. He did not know Knox. Steger was driving north on Highway 67 toward Mayville to participate in a baseball game. He had followed behind the Puls vehicle for quite some distance. His speed and Puls' speed were about 50 miles per hour. The Puls vehicle was at all times in its own right lane of travel. He saw the Knox vehicle at about 300 feet in the wrong lane of travel. He estimated Knox's speed at 55 to 65 miles per hour. Knox was at all times in the wrong lane of travel. He realized a collision was imminent and applied his brakes to avoid being involved in the collision. He was able to stop his car in time and left brake marks of 185 feet. Steger immediately went to a nearby tavern, stated there was a bad accident and asked the people there to call an ambulance and the police. He returned to the scene but stayed only a few minutes, concluded he could do nothing and left for the ball game before the police arrived. He did not volunteer any information to the police until they contacted him several months later.

A driver of a vehicle proceeding in the wrong lane of travel upon a highway such as described here is presumed to be negligent. However, this presumption of negligence can be rebutted if a reasonable explanation for his wrongful position is given and accepted by the jury. Knox's explanation was that he was in the wrong lane of travel solely because he was attempting to avoid a collision with a vehicle in his right lane of travel.

At the trial, Knox requested and the court gave an emergency instruction which would exonerate Knox from negligence if the jury believed his version of the facts.

We believe the court properly instructed the jury as to the law of emergency. However, if under the facts here the jury did accept as true the explanation given by Knox and rejected the one of Steger and then applied the emergency doctrine, it should have exonerated Knox from all negligence. The jury found Knox 30 percent negligent. If in finding this 30 percent the jury might have found him negligent as to either speed or lookout. If so, those failures contributed to the accident and Knox was not entitled to the emergency doctrine to exonerate him.

Again, under these facts, if the testimony of Steger is accepted, as a matter of law Knox was more negligent than Puls.

Under these facts we are of the opinion that the verdict of the jury probably results in a miscarriage of justice as to either the plaintiff Knox or the defendant insurer of Puls, and that a new trial on the liability issues only should be granted by this court by virtue of the provisions of sec. 251.09, Stats.[1]

*By the Court.*—Judgment reversed and remanded for a new trial on the liability issues only.

[1] *See Klinzing v. Huck* (1970), 45 Wis. 2d 458, 173 N. W. 2d 159; *Spath v. Sereda* (1969), 41 Wis. 2d 448, 164 N. W. 2d 246.