STATE, Plaintiff-Respondent, v. GRADY,
Defendant-Appellant.†

Court of Appeals

*No. 79–798–CR. Submitted on briefs September 24, 1979.—
Decided November 2, 1979.*
(Also reported in 286 N.W.2d 607.)

---

† Petition to review pending. This petition was not decided at the
time the volume went to press. Its disposition will be reported in a
later volume.

For the defendant-appellant the cause was submitted on the briefs of *James A. Bottoni, Jr.,* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, with whom on the brief was *Sally L. Wellman,* assistant attorney general.

Before Decker, C.J., Moser, P.J. and Cannon, J.

CANNON, J.   On March 31, 1978, defendant was convicted of armed robbery, party-to-a-crime, in violation of sec. 943.32(1)(b) and (2) and sec. 939.05, Stats., after trial to a jury. On May 17, 1979, the trial court denied defendant's postconviction motions. Defendant appeals from both the judgment of conviction, and the order affirming the conviction.

The testimony adduced at trial showed that on October 18, 1977, defendant and an unidentified friend went to John Marshall High School in Milwaukee to purchase "some weed." While they were in the vicinity of the school, they approached a small group of students gathered outside. Defendant's companion asked to examine a radio held by one of the students. After some general conversation, defendant and his companion, who was still in possession of the radio, began to walk away. Several students followed the two men in an attempt to recover the radio. The fracas attracted additional students who gathered around defendant's car and tried to prevent him from driving away. The students began to rock the car, and tried to recover the radio by pulling the passenger, who was clutching the radio, out of the car. At this point, defendant produced a handgun and pointed it at the students. The students backed off and defendant and his companion were able to drive off with the radio.

Defendant raises two issues on appeal:

1. Does the evidence support the conviction of armed robbery, party-to-a-crime?

2. Did the method of jury selection, and the jury as constituted provide defendant with an impartial jury as guaranteed by the constitutions of the United States and the state of Wisconsin?

## I.

Defendant contends that the evidence does not support a conviction of armed robbery, party-to-a-crime, because the criminal act had been completed prior to the time he produced the gun. Defendant cites *Berry v. State*, 87 Wis.2d 85, 273 N.W.2d 376 (Ct. App. 1978), for the rule that the slightest movement is sufficient to meet the element of "carrying away" or asportation.[1] He argues from this that the robbery was complete when his companion started walking away from the owner of the radio. Defendant maintains that the production of the gun was a separate act, unrelated to the taking of the radio, and prompted by his fear for his own safety when the students surrounded his car. Defendant denies any involvement in the taking of the radio, claims he had no intent to steal it, and denies knowing it was stolen. Defendant argues, therefore, that the state has failed to prove the elements of sec. 943.32(1)(b), Stats.; that defendant took property from the person of the owner; that defendant had an intent to steal; that he threatened imminent use of force to compel acquiescence in the taking of carrying away of the property, and that he was armed with a dangerous weapon while committing the robbery.

---

[1] Since the defendant's brief was filed, the Wisconsin Supreme Court has reversed *Berry, supra* on other grounds. See *Berry v. State*, 90 Wis.2d 316, 280 N.W.2d 204 (1979).

Section 943.32 (1) (b) clearly states that the threat of force, if used to "compel the owner to acquiesce in the taking *or carrying away* of the property" constitutes robbery. [Emphasis supplied.] Robbery "necessarily includes the element of asportation. . . ." *Moore v. State,* 55 Wis.2d 1, 6, 197 N.W.2d 820, 823 (1972). Asportation is defined as: "The removal of things from one place to another. The carrying away of goods; . . . ." Black's Law Dictionary 147 (4th ed. 1968). Asportation, then, is a transaction which continues beyond the point in time when the property of another is taken. Our supreme court discussed this in *Hawpetoss v. State,* 52 Wis.2d 71, 187 N.W.2d 823, 826 (1971) in relation to the crime of theft:

> To constitute the offense of larceny from the person, not only must property be taken from the person of another but it must also be carried away or handled in one of the other manners prescribed by the statute with the requisite intent. In this case, Darlene LeRoy executed the first element by removing the watch from the person of Selvent. At this point it seems questionable whether it could be said that the offense had been committed since the element of asportation was absent. That element was ultimately accomplished by the defendant. Therefore it appears that neither one may actually be said to have executed the entire substantive crime of theft from the person for which the other may be held vicariously liable. *Hawpetoss, supra* at 77, 187 N.W.2d at 826.

> . . . .
> With regard to the crime of larceny in particular, it is generally held that one may be guilty of larceny as a principal where the crime was incomplete until he contributed his aid in the asportation or taking possession of and removal of the stolen property. *Hawpetoss, supra* at 78, 187 N.W.2d at 826.

In the instant case, defendant's production of a gun aided the asportation of the stolen radio. The crime would not have been successful without his intervention.

The essence of defendant's argument is that he cannot be guilty under sec. 939.05, Stats., party-to-a-crime, unless the state can prove that the crime committed was the specific crime which defendant intended to commit. This is clearly contrary to the holding of *State v. Cydzik*, 60 Wis.2d 683, 697, 211 N.W.2d 421, 429 (1973), which held that legal intent can be inferred from conduct. It is no defense to claim that defendant did not actually take the radio. The record clearly indicates he was present during the entire incident and facilitated the commission of the crime. The jury could reasonably believe that defendant knew of the robbery, and intentionally assisted his companion in completing the crime. The question of intent is generally one to be determined by the trier of fact. *Household Utilities, Inc. v. Andrews Co.*, 71 Wis.2d 17, 29, 236 N.W.2d 663, 669 (1976). The jury, as the trier of fact, was free to discount the defense testimony. *Gedicks v. State*, 62 Wis.2d 74, 79–81, 214 N.W.2d 569, 572 (1974). Where there is any credible evidence which under any rational view fairly admits of an inference which will support the jury's findings, such findings must not be changed, and this is particularly true where the findings have the approval of the trial court. *Nelson v. Travelers Ins. Co.*, 80 Wis.2d 272, 259 N.W.2d 48 (1977); *Roach v. Keane*, 73 Wis.2d 524, 243 N.W.2d 508 (1976); *Toulon v. Nagle*, 67 Wis.2d 233, 226 N.W.2d 480 (1975); *Knox v. American Standard Ins. Co.*, 64 Wis.2d 229, 219 N.W.2d 333 (1974); *Lipinski v. Pakulski*, 62 Wis.2d 628, 215 N.W.2d 468 (1974). There is sufficient credible evidence to support the jury's finding, and we will not disturb it on appeal.

## II.

Defendant also contends he was denied his constitutional right to a fair trial by an impartial jury as a result of the state's use of its peremptory challenges to remove three blacks from the jury.

While the issue of systematic discrimination in the selection of a jury array has been before the Wisconsin Supreme Court on several occasions,[2] the question of discrimination by means of the peremptory challenge is one of first impression in this state.

Section 972.03, Stats. provides that in a criminal jury trial, both the prosecution and the defense are entitled to four peremptory strikes.[3] These strikes have historically been available to attorneys without cause and without justification. *Swain v. Alabama,* 380 U.S. 202, 220 (1965). For an extensive review of the background of the peremptory system see *Swain, supra* at 212–22.

---

[2] *Wilson v. State,* 59 Wis.2d 269, 208 N.W.2d 134 (1973); *Brown v. State,* 58 Wis.2d 158, 205 N.W.2d 566 (1973); *State v. Zdiarstek,* 53 Wis.2d 776, 193 N.W.2d 833 (1972); *McKissick v. State,* 49 Wis.2d 537, 182 N.W.2d 282 (1971); *State v. Bond,* 41 Wis.2d 219, 163 N.W.2d 601 (1969); *State v. Holmstrom,* 43 Wis.2d 465, 168 N.W.2d 574 (1969).

[3] 972.03 Peremptory challenges. Each side is entitled to only 4 peremptory challenges except as otherwise provided in this section. When the crime charged is punishable by life imprisonment the state is entitled to 6 peremptory challenges and the defendant is entitled to 6 peremptory challenges. If there is more than one defendant, the court shall divide the challenges as equally as practicable among them; and if their defenses are adverse and the court is satisfied that the protection of their rights so requires, the court may allow the defendants additional challenges. If the crime is punishable by life imprisonment, the total peremptory challenges allowed the defense shall not exceed 12 if there are only 2 defendants and 18 if there are more than 2 defendants; in other cases 6 challenges if there are only 2 defendants and 9 challenges if there are more than 2.

*Swain, supra,* is the leading case concerning the constitutionality of using the peremptory challenge to exclude persons belonging to a particular race or class from juries. Accepted by the overwhelming majority of jurisdictions,[4] *Swain* supports the peremptory strike as an essential aspect of trial by jury.

The defendant in *Swain,* who was black, and had been convicted by an all-white jury, argued that his fourteenth amendment rights were violated when the state peremptorily struck all six blacks on the venire. The Court disagreed, and recognized the race or class of prospective jurors as a legitimate trial-related consideration in most cases.

[W]e cannot hold that the striking of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, pro tanto, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterward. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned. *Swain, supra* at 221-2.

. . . .

The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or

---

[4] See Annot., 79 A.L.R.3rd 14 (1977).

that they were removed because they were Negroes. *Swain, supra* at 222.

*Swain* also made it clear, however, that the systematic use of peremptory challenges to exclude a particular race or class from juries over an extended period of time would not be sanctioned. Thus a balancing approach is required to ensure a fair trial by a neutral jury. The competing interests involved in such a situation must be carefully weighed to protect the state's right to remove potential jurors without cause while protecting the defendant from trial by a jury which by its very composition is designed to be biased against him.

We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged. *But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors* by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, *the Fourteenth Amendment claim takes on added significance. Swain, supra* at 774. [Emphasis supplied.]

This court is in agreement with the reasoning in *Swain*. We must, therefore, deny defendant's claim. Defendant in the instant case has failed to render inoperative the presumption that the prosecutor was using his peremptory challenges to obtain a fair and impartial jury.[5] Defendant moved for a mistrial on the grounds

[5] The record establishes that the trial court made a finding that an extensive voir dire was conducted. The briefs of the parties also show that while only two questions were asked by the prosecutor, there was extensive questioning by defendant's counsel.

of prejudice because the state peremptorily struck three blacks from the jury.[6] This bare allegation of discrimination is not sufficient to shift the burden to the state to explain its actions. To establish a prima facie case, the defendant would have to show that the prosecution consistently challenged blacks "whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, . . . ." In reaching our decision, this court has carefully considered defendant's contentions and weighed the competing interests involved. We do not find error merely because the prosecution struck all three blacks on the jury in this case. *Swain*, as adopted, establishes race as an appropriate basis for the exercise of peremptory challenges. Nor do we find error because the state's action resulted in defendant being tried by a jury which did not contain any members of his own race. It is well settled that:

The mere lack of a proportional representation has not been regarded as constitutionally deficient, [*See e.g., Virginia v. Rives* (1879), 100 U. S. 313, 322, 323, 25 L. Ed. 667; *Akins v. Texas* (1945), 325 U. S. 398, 403, 65 Sup. Ct. 1276, 89 L. Ed. 1962.] and indeed, it has been held that an accused has no constitutional right to a jury composed of members, or having even a single member,

---

The record further indicates that the prosecutor utilized information supplied to him by his office in exercising his peremptory strikes. Additionally, the state indicated that it was willing to disclose this information and the reasons for the challenges but requested that such discussion be in chambers. The court relied on case law in holding that such an explanation was unnecessary in the exercise of peremptory challenges. [I at 83–86.]

[6] Your Honor, I also ask the Court to consider an oral motion at this time to strike the jury for the reason that the panel contained three members of a minority, and all three were consecutively stricken by the State. And we feel that prejudice was used in picking this jury was such as to render unable for the defendant to get a fair trial at this time. [I at 83.]

of his or her class, race or sex. [*See e.g.*, *Swain v. Alabama* (1965), 380 U. S. 202, 203, 204, 85 Sup. Ct. 824, 13 L. Ed.2d 759.] This principle was stated in *Fay v. New York* as follows:

"It is fundamental in questioning the composition of a jury that a mere showing that a class was not represented in a particular jury is not enough; there must be a clear showing that its absence was caused by discrimination . . . ." [*Fay v. New York*, 332 U. S. 261, 284 (1947).]

*Brown v. State*, 58 Wis.2d 158, 165–6, 205 N.W.2d 566, 570–1 (1973).

While generally applied to cases challenging the jury selection process and the validity of the jury array, this principle is equally applicable to the circumstances presented in this case.

In sum, defendant's burden is a heavy one. He must show intentional and systematic discrimination in the use of peremptory challenges by the prosecutor over a long period of time. Defendant here has failed to carry his burden.

Defendant cites one case in support of his contention, *People v. Wheeler*, 148 Cal. Rptr. 890, 583 P.2d 748 (1978). The *Wheeler* analysis also utilizes the presumption that the exercise of peremptory challenges is constitutionally permissible. However, *Wheeler* allows the defendant to establish a prima facie case of discrimination, and shift the burden to the state upon a lesser showing:

First, . . . , he should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross-section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias. 583 P.2d at 764.

Under *Wheeler*, if the court finds a prima facie case has been established using the above criteria, the state must then show that the motivation for the strikes was not group bias.

We refuse to adopt *Wheeler* on the ground that the test proposed by the California court is vague and uncertain, and severely limits the scope of peremptory challenges. If peremptory strikes can only be exercised in a certain way, dependent on circumstances, and subject to judicial scrutiny, they will no longer be peremptory. We refuse to undertake such an alteration of the very nature of the peremptory system.

The denial of a motion for mistrial will be reversed only on a clear showing of an abuse of discretion by the trial court. *Johnson v. State*, 75 Wis.2d 344, 365, 249 N.W.2d 593, 604 (1977). The trial court must determine, in light of the whole proceeding, whether the claimed error is sufficiently prejudicial to warrant a mistrial. *Oseman v. State*, 32 Wis.2d 523, 528–29, 145 N.W.2d 766, 770–71 (1966). We hold that the trial court did not abuse its discretion. There was no prejudicial error sufficient to warrant a mistrial.

*By the Court.*—Order and judgment affirmed.