**Jennifer PATRI, Petitioner,**

v.

**Donald PERCY, Secretary of the Department of Health and Social Services, and Joe Eich, Parole Officer, Waupaca County, Respondent.**

No. 81–C–824.

United States District Court, E. D. Wisconsin.

Jan. 18, 1982.

Alan D. Eisenberg, Milwaukee, Wis., for petitioner.

Bronson C. LaFollette, Wis. Atty. Gen. by Pamela Magee-Heilprin, Asst. Atty. Gen., Madison, Wis., for respondent.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

Jennifer Patri petitions for a writ of habeas corpus. She asserts three grounds. 1) The trial court's instruction on the issue of intent shifted the burden of proof on that issue to the defendant. 2) Evidence introduced at trial was acquired through an unreasonable search. 3) The prosecution systematically excluded women from the jury.

## I. BACKGROUND

The petitioner was convicted of manslaughter after a jury trial. The basic facts surrounding her conviction are not disputed. The petitioner was charged with the death of her husband, Robert Patri. At trial, Mrs. Patri testified that her husband had beaten her many times, once causing a miscarriage. He had also repeatedly threatened to kill her. In November, 1976, Mr. Patri moved in with another woman, and Mrs. Patri filed for divorce. Mr. Patri then sought custody of their two children.

At about 7:30 A.M., March 25, 1977, Mr. Patri arrived at the petitioner's farm to pick up the children. Mrs. Patri had already sent the children to her brother's home because she wanted to discuss their custody with her husband. Mrs. Patri killed her husband that morning with a shotgun she had purchased two days earlier. Mrs. Patri has told two versions of the events of that morning, one at trial and one to the sheriff on the day after the slaying. The state court of appeals that considered Mrs. Patri's appeal from her conviction summarized the two versions, referring to Mrs. Patri as "defendant."

"Defendant testified at the trial that during their argument she told Robert that she knew that he had sexually molested his young niece. Robert became enraged, picked up a knife and came toward her, saying 'I'm going to shut your fucking mouth once and for all.' Defendant testified that she ran down to the basement to evade Robert. He followed her with the knife. She took the shotgun from a shelf and told him to get out. He stopped when he saw the gun, but told her, 'I think you're bluffing. I'm going to shut you up once and for all.' He moved toward her and she fired the shotgun without aiming. He still appeared to be coming toward her and she fired again. She testified that she remembers little of what happened after the shooting.

"Defendant told the sheriff that she and Robert were arguing in the kitchen. As Robert got ready to leave, defendant took a shotgun from the living room, loaded it with a single shell, and fired a shot into Robert's back. She reloaded and fired another shot into his head. She dragged the body to the basement, went

upstairs, cleaned the bloodstains, and burned the clothes she was wearing." *State v. Patri*, No. 78–187–CR, slip op. at 3–4 (Ct.App., Dist. IV, filed December 19, 1980); *review denied*, 308 N.W.2d 416 (1981).

There was no physical evidence presented at trial that showed where the shooting took place. There was some physical evidence that supported the former story. Blood and tissue were found in the basement, as were indentations in a basement door that could have been made by shotgun pellets. Analysis of Mr. Patri's wounds indicated that he had been shot high in the back from a downward angle.

After the shooting, Mrs. Patri made several trips about the area. At about 1:00 A.M. on March 26, 1977, she moved her husband's body from the house to a nearby shed, where she buried it in a shallow hole and covered it with dirt and debris. She then lit several fires in the house and waited inside. After a time, she left and called the fire department from the home of a neighbor.

At about 6:00 A.M. a deputy state fire marshal arrived in response to a call suggesting arson from the firemen at the scene. He found five separate burn sites in the house, suggesting arson, and found the blood and tissue in the basement. The petitioner told him that the latter was from sausage meat. The deputy marshal then summoned the chief deputy from the sheriff's department to assist in the arson investigation. The two again toured the house and then checked the outbuildings. In one outbuilding they found freshly turned earth which the marshal probed with a broomhandle. They did not investigate this further at that time.

The two then decided to recheck all the buildings. The fire marshal testified that he always reexamines fire sites · because things are frequently overlooked during the first examination. When they reexamined the shed, the deputy sheriff noticed a hand protruding from the dirt under a pile of debris. They then notified the sheriff and obtained a search warrant. The subsequent search disinterred the body of Robert Patri.

At 3:15 P.M. that day, Mrs. Patri made her statement to the sheriff. She was charged with first degree murder and arson. At trial, the arson charge was severed. Mrs. Patri was found guilty of manslaughter after a jury trial in circuit court for Waupaca County, Wisconsin. Judgment of conviction was entered on December 15, 1977. She was sentenced to the maximum ten years in prison; she served approximately three years and three months of that sentence. She was paroled on June 2, 1981.

The arson charge went to trial in 1978. The trial was bifurcated; she was found guilty in the first part, but not guilty by reason of mental disease or defect in the second part. The proceedings relating to the arson charge are not challenged in the instant proceeding.

## II.  THE INTENT INSTRUCTION

The petitioner contends in her first ground that the trial judge improperly instructed the jury on the issue of intent. It is undisputed that at trial the judge used the following language when instructing the jury on the charge of first degree murder:

> "Intent to kill must be found as a fact before you can find the defendant guilty of first degree murder. You cannot look into a person's mind to find her intent. You may determine such intent directly or indirectly from all the facts and the evidence concerning this offense. You may consider any statements or conduct of the defendant which indicate her state of mind. You may find from such facts or conduct that she intended the natural and probable consequences of her acts, but you are not required to do so. You are the sole judges of the facts and you must not find the defendant guilty of first-degree murder unless you are satisfied beyond a reasonable doubt that the defendant intended to kill." Tr., Vol. 4, pp. 1304–05.

In *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the

Supreme Court found unconstitutional an instruction that stated that "the law presumes that a person intends the ordinary consequences of his voluntary acts." *Id.*, at 512, 99 S.Ct. at 2453. The Court found this language to be a mandatory presumption on the issue of intent that either removed the burden of proof on the element of intent from the prosecution or shifted the burden of persuasion on that element to the defendant. *Id.*, at 514–17, 99 S.Ct. at 2454–55. Similarly, the following language previously found in Wisconsin Jury Instruction—Criminal # 1100 has been found unconstitutional:

> "When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all of the natural, probable, and usual consequences of his deliberate acts." *Austin v. Israel*, 516 F.Supp. 461, 464–67 (E.D.Wis.1981); *Harris v. Israel*, 515 F.Supp. 568 (E.D.Wis.1981); *Dreske v. Wisconsin Department of Social Services*, 483 F.Supp. 783 (E.D.Wis.1980); *Adams v. State*, 92 Wis.2d 875, 289 N.W.2d 318 (Ct.App.1979), *reversed*, 95 Wis.2d 529, 290 N.W.2d 872 (1980); *see Muller v. Israel*, 510 F.Supp. 730 (E.D.Wis.1981); *but see Pigee v. Israel*, 503 F.Supp. 1170 (E.D.Wis.1980); *Muller v. State*, 94 Wis.2d 450, 289 N.W.2d 570 (1980).

The instruction used at the petitioner's trial is a modification of the unconstitutional # 1100. It has marked differences however. The modified instruction avoids any mention of a "presumption" or any forms of that word. It also stresses that the jurors are not required to find the intent from the evidence; the decision is totally theirs, based on their assessment of the evidence. Finally, the jurors are admonished that they must be satisfied beyond a reasonable doubt on the issue of intent.

The petitioner contends that this instruction shifts the burden of proof on the element of intent from the prosecution to the defense. I find no merit in this argument. The instructions make plain the prosecution's burden of proving guilt beyond a reasonable doubt. The jury was repeatedly instructed on that burden. Tr., Vol. IV, pp. 1303, 1305, 1308, 1309, 1310, 1319, 1320. The jury was explicitly instructed on the presumption of innocence. *Id.*, at 1320–21.

The instruction on intent does not have any language that could be interpreted to shift the prosecution's burden. No reasonable juror could interpret the instruction improperly. In addition, no reasonable juror could have interpreted the intent instruction to be a direction from the court that the element of intent was established. I find the instant instruction to be precisely the type of instruction that has been upheld by the Supreme Court. *See Ulster County Court v. Allen*, 442 U.S. 140, 163–67, 99 S.Ct. 2213, 2227–30, 60 L.Ed.2d 777 (1979). This ground of the petition does not support the granting of the writ.

## III. THE WARRANTLESS SEARCH

The petitioner contends that the searches of the outbuildings at the Patri farm went beyond the permissible limits of a warrantless search and thus violated the fourth amendment's strictures on searches. It is undisputed that the deputy sheriff and the fire marshal did not have a warrant to search the Patri house and the outbuildings at the time they discovered what later proved to be Robert Patri's body. It was that discovery that prompted them to seek a warrant. The respondent argues that the search was constitutional.

In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Supreme Court held:

> "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of application of the rule persist with special force." *Id.*, at 494–95, 96 S.Ct. at 3052.

I note that the petitioner does not couch her argument in terms of evidence being introduced at trial that was discovered as a result of the allegedly unconstitutional search. However, if no evidence discovered as a result of the search was introduced at her trial, there would be no basis for granting the writ. If the search had produced no evidence, the petitioner would be arguing that her conviction should be overturned because of a search that had absolutely no effect on her trial. This absurd reasoning cannot be the basis for the instant petition. The search must have produced evidence that was introduced at trial, and the petitioner is arguing that the evidence should have been excluded because the search was invalid.

The issue of the search was the subject of a lengthy hearing at trial. Tr., Vol. I, pp. 366–88. The petitioner's trial counsel conducted examinations of the fire marshal, id., at 372–76, 379, and the deputy sheriff, id., at 380–85. Her counsel also argued the matter at length. Id., at 366–67, 368–71, 386–87. The petitioner's motion to suppress was denied. Id., at 387–88. This issue was raised again as one of several grounds to support the petitioner's motion for a new trial. Tr., Motions after Verdict, pp. 17–18. This motion was denied. Id., at 39–40. The petitioner also raised this issue on appeal. The court of appeals ruled that the search was reasonable and therefore constitutional. State v. Patri, supra, at 17–22; but see id., (dissenting opinion by Dykman, J.).

■ Based on this record, I have no hesitation in concluding that the petitioner was given a full and fair opportunity to litigate the issue within the meaning of Stone. This case fits precisely the considerations of Stone. The search of which the petitioner complains occurred almost five years ago. Assuming, arguendo, that the search was unconstitutional, the deterrent that would result from granting the petition would be "minimal." Therefore, Stone bars the granting of the petition.

■ If I were to reach the merits of the petitioner's claim, I would find that the search in question was reasonable under Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978), and thus was not unconstitutional. Thus even in the absence of Stone, the petitioner's second ground would not support the issuance of the writ.

## IV. THE PROSECUTION'S JURY STRIKES

At the petitioner's trial, the prosecution used all eight of its peremptory challenges to strike females. Tr., Vol. I, p. 187. The petitioner contends that this violated her sixth amendment right to a fair and impartial trial. The Supreme Court has stated:

"[T]he requirement of a jury's being chosen from a fair cross section of the community is fundamental to the American system of justice." Taylor v. Louisiana, 419 U.S. 522, 530, 95 S.Ct. 692, 697, 42 L.Ed.2d 690 (1975).

However, this policy does not support the petitioner's argument.

In Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the Supreme Court examined the propensity of certain prosecutors to engage in the systematic exclusion of blacks from juries. The Court noted that the prosecutor is presumed to be "using the State's challenges to obtain a fair and impartial jury to try the case before the court." Id., at 222, 85 S.Ct. at 836. It then held that the presumption is not overcome by a showing that the prosecutor used his challenges to exclude all members of a given group. However, the Court stated that defendants could prevail on the claim if they could establish that the prosecutor struck the same group or groups from jury panels in case after case, for that could indicate that the purpose of the peremptory challenges was being perverted. Id., 222–24, 85 S.Ct. 836–38.

The petitioner has made no effort to make the type of showing required by Swain. Instead, she points to several state court decisions that apply a stricter standard. See People v. Wheeler, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978);

*Commonwealth v. Soares*, 377 Mass. 461, 387 N.E.2d 499 (1979); *cert. denied*, 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979). The petitioner places special emphasis on an Illinois case, *People v. Smith and Lewis*, 91 Ill.App.3d 523, 47 Ill.Dec. 1, 414 N.E.2d 1117 (1980), which adopted a rule stricter than *Swain* for the Illinois courts. The petitioner notes that Wisconsin has followed the *Swain* rule, *State v. Grady*, 93 Wis.2d 1, 286 N.W.2d 607 (Ct.App.1979). However, the petitioner "urges this court to reconsider the holding in *Grady* and adopt the principles in *Wheeler* and *Soares* in light of [the holding in *Smith and Lewis*]."

This argument betrays a fundamental misunderstanding of this court's function when considering a petition for a writ of habeas corpus. It is the function of this court to determine whether the petitioner's constitutional rights were violated at her trial. This court does not sit to review those rules which the state has chosen to govern its criminal procedures, except to determine whether those rules impermissibly conflict with constitutional standards. The constitutional rule in this area is established by the United States Supreme Court in *Swain*, and Wisconsin has expressly adopted that rule and applied it in the petitioner's case. *State v. Patri, supra*, at 23–24. That Illinois and other states have chosen to apply a stricter rule in their courts has no import in the analysis of whether the petitioner's constitutional rights were violated. This court does not have any authority to dictate that the Wisconsin state courts should follow any rule stricter than what the United States Supreme Court has stated the Constitution requires.

The petitioner has presented nothing that remotely overcomes the presumption that the prosecution used its peremptory challenges properly at her trial. "Defendants are not entitled to a jury of any particular composition. . . ." *Taylor, supra*, 419 U.S. at 538, 95 S.Ct. 701, citing *Fay v. New York*, 332 U.S. 261, 284, 67 S.Ct. 1613, 1625, 91 L.Ed. 2043 (1947); *Apodaca v. Oregon*, 406 U.S. 404, 413, 92 S.Ct. 1628, 1634, 32 L.Ed.2d 184 (1972) (plurality opinion). I note that even with the use of the prosecution's peremptory challenges solely to exclude women, the jury at the petitioner's trial still included three women; one alternate was also a woman. Tr., Vol. I, p. 186; Tr., Vol. IV, pp. 1491–92. I find no merit to the petitioner's contention that the prosecution's use of its peremptory challenges deprived her of a fair and impartial trial.

### CONCLUSION

In summary, I find that the jury instruction on the issue of intent contains none of the constitutional infirmities outlined in *Sandstrom*. I also find that consideration here of the issue of an alleged warrantless search by the fire marshal is barred by *Stone*, and, in any event, the search was proper. I also find no constitutional issues presented by the prosecution's use of its peremptory challenges at trial.

Therefore, IT IS ORDERED that the petition of Jennifer Patri for a writ of habeas corpus be and hereby is denied.

IT IS ALSO ORDERED that this action be and hereby is dismissed.